UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANGELICA K. OLIVIERI,

     Plaintiff,

v.                       Case No.:  6:22-cv-1464-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Angelica K. Olivieri seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.   Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.      Procedural History

On August 5, 2019, Plaintiff applied for a period of disability and disability insurance benefits, and on October 29, 2019, Plaintiff applied for supplemental security income. (Tr. 80, 81, 118, 119). Plaintiff alleged a disability onset date of June 26, 2019. (Tr. 295-300). The applications were denied initially and on reconsideration. (Tr. 80, 81). Plaintiff requested a hearing, and on March 19, 2021 and November 5, 2021, hearings were held before Administrative Law Judge Denise Pasvantis ("ALJ"). (Tr. 34-57, 1304-1330). On November 19, 2021, the ALJ entered a decision finding Plaintiff not under a disability from June 26, 2019, through the date of the decision. (Tr. 15-27).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on July 15, 2022. (Tr. 1-5). Plaintiff began the instant action by Complaint (Doc. 1) filed on August 17, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

### D.      Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2019, the alleged onset date. (Tr. 18). At step two, the

ALJ found that Plaintiff had the following combination of severe impairments: "migraine headaches, Hodgkin's lymphoma in remission, cardiac arrhythmia, fibromyalgia, vasovagal syncope, and obesity." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand 10 to 30 minutes without interruption and 1 hour total in an 8-hour workday, walk 10 to 30 minutes without interruption and 1 hour total in an 8-hour workday, sit 2 hours without interruption and 6 hours total in an 8-hour workday, frequently operate foot controls, operate a motor vehicle, and work around humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations, occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes and scaffolds and work around unprotected heights and moving machinery. She must avoid working around loud environments such as that found in heavy traffic.

(Tr. 21).

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 26). At step five, the ALJ found that considering Plaintiff's age (23 years old on the alleged disability onset date), education (at least high school), work experience, and RFC,

there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   Document preparer, DOT 249.587-018, sedentary, unskilled

    (2)   Addresser, DOT 209.587-010, sedentary, unskilled

    (3)   Call-out operator, DOT 237.367-014, sedentary, unskilled

(Tr. 26-27). The ALJ concluded that Plaintiff had not been under a disability from June 26, 2019, through the date of the decision. (Tr. 27).

## II.    Analysis

On appeal, Plaintiff raises two issues:

    (1)    Whether the ALJ provided adequate analysis of the factors of supportability and consistency when considering medical opinions; and

    (2)    Whether the ALJ failed to determine the range of fluctuation of Plaintiff's symptoms when determining her residual functional capacity pursuant to SSR 96-8p.

(Doc. 24, p. 15, 22).

## A.    The ALJ's Assessment of Medical Opinions

Plaintiff contends that the ALJ erred in evaluating the opinions of treating cardiologist Mohammed Alomar, M.D. and primary care physician Malinda Newcombe, M.D. (Doc. 24, p. 15). Plaintiff later adds similar arguments for Michael Fradley, M.D.'s opinion. (Doc. 24, p. 19). In finding these opinions unpersuasive, Plaintiff argues the ALJ failed to address relevant objective evidence and

explanations presented by these medical providers to support their opinions. (Doc. 24, p. 19). Instead, Plaintiff claims that the ALJ offered a "very generic and legally inadequate analysis of all three opinions." (Doc. 24, p. 19).

### 1.    Legal Authority

The same legal authority applies to all three opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and

consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history,

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20

C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### 2.    The ALJ's Consideration of the Opinions of Drs. Alomar, Fradley, and Newcombe

In the decision, the ALJ summarized Drs. Alomar, Fradley, and Newcombe's

opinions and then discounted them together, using the same reasoning:

> The opinions of Dr. Fradley, Dr. Alomar, and Dr. [Newcombe] are unpersuasive because they are inconsistent with and not supported by the objective medical evidence. Their opinions appear to rely more on the claimant's subjective reports than objective findings. There is little to no documentation of recent syncopal episodes or migraine headaches that support the frequency the claimant has alleged. The claimant has alleged significant difficulty with daily activities. For example, she has alleged that she keeps a wheelchair in her car to use as needed (Testimony). However, medical records from March 2021 indicate that her gait and station were both normal (Ex. 27F at 18). The claimant experiences some limitations due to her severe impairments, but her limitations would not preclude the performance of all work activity. Notably, the determination of whether an individual is "disabled" under the Social Security Act is an administrative finding that is reserved for the Commissioner (20 CFR 404.1527(e) and 416.927(e)).

(Tr. 25). The Court begins with Dr. Alomar's opinion.

### 3.    Dr. Alomar's Opinion

Cardiologist Mohammed Alomar, M.D. saw Plaintiff four times since August

1, 2019. (Tr. 1175). Plaintiff's chief complaints were syncope (passing out) and

inappropriate sinus tachycardia (rapid heart rate), related to her treatment for

Hodgkin's lymphoma in 2008. (Tr. 519, 612, 1195). Plaintiff's heart rate would

elevate on exertion and return to base line. (Tr. 612). In her medical history, Dr. Alomar noted that Plaintiff's last episode of syncope occurred in October 2018, but she has had multiple near syncopal episodes. (Tr. 520). On examination, Plaintiff exhibited no shortness of breath, normal heart rate, regular rhythm, no murmur, no gallop, good pulses in all extremities, normal peripheral perfusion, and no edema. (Tr. 522, 621). Dr. Alomar prescribed various medications to attempt to relieve Plaintiff's symptoms of syncope and tachycardia with varying success. (Tr. 523, 618, 1198).

On March 12, 2021, Dr. Alomar completed a Cardiac Medical Source Statement. (Tr. 1175). He diagnosed Plaintiff with autonomic dysfunction and inappropriate sinus tachycardia. (Tr. 1175). He based his findings on telemetry, ECG, and a tilt table test. (Tr. 1175). He found Plaintiff had arrhythmia, exertional dyspnea, syncope, exercise intolerance, near syncope, and palpitations. (Tr. 1175). He described Plaintiff's symptoms as: autonomic dysfunction secondary to radiation treatment with tachycardia, palpitations, and dizziness with activity. (Tr. 1175). He found the episodes would occur daily, often several times throughout the day with Plaintiff needing to rest 5-10 minutes per episode. (Tr. 1175). He found the treatment of lifestyle modification by increasing salt and fluid unsuccessful. (Tr. 1176). Plaintiff was also unable to tolerate beta blockers because of resting bradycardia (a

slower than normal heart rate), and instead was prescribed other medication. (Tr. 1176).

Dr. Alomar found that stress would play a critical role in exacerbating symptoms. (Tr. 1176). He concluded Plaintiff was capable of low stress work, but would have exacerbation of symptoms with exertion and change of position, "however, may tolerate more sedentary work." (Tr. 1176). He also found Plaintiff would need unscheduled breaks of 5-10 minutes to lie down, and would be off task 20% of the workday. (Tr. 1176). He further found Plaintiff would have good and bad days, and would miss more than four days per month of work. (Tr. 1176). He described further limitations, such as periodic stress related to onset of dizziness or palpitations with her radiation induced autonomic dysfunction. (Tr. 1177).

As stated above, the ALJ found Dr. Alomar's opinion unpersuasive because it was inconsistent with and not supported by objective medical evidence. (Tr. 25). In support, the ALJ found: (1) Dr. Alomar relied on Plaintiff's subjective reports rather than objective findings; (2) there was little or no documentation of recent syncopal episodes that support the frequency alleged; and (3) Plaintiff kept a wheelchair in her car, but a recent exam in March 2021 showed her gait and station were both normal. (Tr. 25).

The Commissioner argues that the medical records support the ALJ's findings. (Tr. 27, p. 12-13). The Commissioner contends that Plaintiff's last syncopal

episode in October 2018, before the alleged onset date, and her near syncopal episodes were largely before the adjudicated period. (Doc. 27, p. 12). The Commissioner also contends that at examinations, Plaintiff orthostatic vital signs were normal, her ECG demonstrated normal sinus rhythm, her heart rate was normal, she had no edema, and her respiration was not labored. (Doc. 27, p. 12-13). When Plaintiff reported her symptoms were worsening, Dr. Alomar simply adjusted her medications and recommended that she return in 6 months for a follow-up. (Doc. 27, p. 13). At the follow-up appointment, Plaintiff complained of an elevated heartrate on exercise, and her medications were adjusted. (Doc. 27, p. 13). Thus, the Commissioner argues the ALJ's decision to find Dr. Alomar's opinion unpersuasive is supported by substantial evidence. The Court disagrees.

To discount Dr. Alomar's opinion, the ALJ found that Dr. Alomar relied on Plaintiff's subjective reports rather than objective findings. (Tr. 25). But in his Medical Source Statement, Dr. Alomar specifically identified the objective tests of telemetry, ECG, and tilt table to show Plaintiff's impairments. (Tr. 1175). Thus, Dr. Alomar's Medical Source Statement is consistent with and supported by this medical evidence.

Next, the ALJ stated that there was little or no documentation of recent syncopal episodes. (Tr. 25). Plaintiff's testimony explains this discrepancy. At the hearing, Plaintiff explained that she wears a device that monitors her heart rate and

the device buzzes to alert her that her heart rate is over 120 beat per minute for more than ten minutes. (Tr. 1325). When this occurs, she explained that she sits down or else she will pass out. (Tr. 1325-26). She testified that the device is rarely activated because she knows that when she has shakiness and dizziness, her heart rate is accelerated and she sits down to avoid passing out. (Tr. 1325-26). So in essence, Plaintiff avoided synoptic episodes or passing out by carefully monitoring her heart rate herself. As a result, as Dr. Alomar found, Plaintiff had episodes several times throughout the day, but monitored them to avoid passing out.

Likewise, Plaintiff explained she keeps a wheelchair in her car, not because her gait and station were unsteady, but to allow her to be in a public space and, when her heartrate becomes irregular, to have a place to sit down to avoid a synoptic episode in public. (Tr. 1326). Thus, the ALJ discounting Dr. Alomar's opinion based on Plaintiff having a wheelchair but also having a normal gait and station is not supported by or consistent with the evidence. Thus, substantial evidence does not support the ALJ's reasons finding Dr. Alomar's opinion unsupported by and inconsistent with the medical evidence of record. As a result, remand is warranted to reevaluate Dr. Alomar's opinion.[1]

---

[1] The Commissioner also argues that Plaintiff is inviting the Court to reweigh the evidence. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, substantial evidence does not support the ALJ's

**B.      Remaining Issues**

Plaintiff also challenges whether substantial evidence supports the ALJ persuasiveness findings on Drs. Fradley and Newcombe's opinions and whether the ALJ failed to consider the range of fluctuation of Plaintiff's symptoms in determining the RFC. Rather than deciding these issues, because this action is remanded on other grounds that may affect the remaining issues, on remand, the Commissioner is directed to reconsider these issues as well.

**III.   Conclusion**

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical and other evidence of record, and the range of fluctuation of Plaintiff's symptoms in determining the RFC. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 15,, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

decision as to the persuasiveness of Dr. Alomar's opinion.

- 15 -